UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

JOHN CIURCINA

                                Plaintiff,                Case No.: 1:19-cv-674

   -against-

NICK HAROS & ORLAND OIL AND GAS, LLC        **COMPLAINT**

                              Defendants.
-------------------------------------------------------------------X

        Plaintiff John Ciurcina ("Mr. Ciurcina" or "Plaintiff"), by and through its undersigned counsel, as and for his Complaint against Nick Haros ("Mr. Haros,") and Orland Oil and Gas, LLC ("Orland") (collectively "Defendants"), alleges as follows:

**NATURE OF ACTION**

        1.     This case arises out of the refusal of a client to compensate his attorney and business advisor for his years of diligent service resulting in millions of dollars in damages. Mr. Ciurcina provided to Mr. Haros substantial legal, business and professional research services regarding investments in the oil and gas industry (the "Oil and Gas Investments"). Mr. Ciurcina's extensive services amounting to over 3,000 hours of work over a three-year period brought about the acquisition of several oil and gas properties, which have and continue to earn profits for Defendants.

        2.     Mr. Haros has failed to fulfill his legal obligations, for his own personal gain, and has failed to compensate Mr. Ciurcina whatsoever for his thousands of hours of work. Simply stated, Mr. Ciurcina provided all of the requisite services to Mr. Haros to bring about the investments at issue, yet Mr. Haros is now—without any excuse or justification—refusing to remit compensation to Mr. Ciurcina as obligated for all the benefits conferred.

        3.     Mr. Ciurcina has therefore been left with no option but to petition the court for

rightful compensation in an amount to be determined at trial but not less than $9,198,220.

## PARTIES

4. Plaintiff John Ciurcina is an individual who is currently, and was at all relevant times herein, a resident of Garden City, New York.

5. Defendant Nick Haros is an individual who is currently, and was at all relevant times herein, a resident of Fort Lauderdale, Florida and is the owner of Orland Oil & Gas, LLC.

6. Orland Oil & Gas, LLC is a Texas limited liability company with a principle place of business in the State of Texas.

## JURISDICTION & VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) (diversity jurisdiction) because the parties are domiciled in different states and the amount in controversy exceeds $75,000. Plaintiff John Ciurcina is a citizen of the State of New York. Nick Haros is a citizen of Florida. Orland Oil & Gas, LLC is established under the laws of the State of Texas and has a principle place of business in Texas. Therefore, no Defendant shares a domicile with Plaintiff.

8. This Court has personal jurisdiction over Defendant Nick Haros because he maintains an office in this district, conducts business in this district, and manages the business and funds of Orland in this district, and the majority of services rendered were completed by Plaintiff in this district. This Court has personal jurisdiction over Defendant Orland because Orland's business and funds are managed in this district and its website is maintained in this district. Meetings were held in New York City at the Terrace Club and various restaurants and at Mr. Haros' office in Queens County, NY. Mr. Haros splits his time between his home in Florida and a home in New York City, spending approximately five months of the year in New York

City.

9. Venue is proper in this federal judicial district pursuant to 38 U.S.C. § 1391(b), because a substantial part of the events giving rise to Plaintiff's claims occurred in this district, Plaintiff's harm was suffered in this district and because the majority of services rendered by Plaintiff to Defendants occurred in this District.

## FACTUAL BACKGROUND

10. Mr. Ciurcina and Mr. Haros' business relationship began in 2002 when Mr. Haros hired Mr. Ciurcina's law firm—of which he is the managing partner—to render legal services in relation to residential real estate owned by Mr. Haros in New York, New York (the "New York Properties").

11. Historically, Mr. Ciurcina's practice has included real estate law, landlord-tenant law, and commercial leases.

12. Between 2002 and 2008, Mr. Ciurcina provided legal services in relation to the New York Properties.

13. During this time, Mr. Ciurcina represented Mr. Haros' interests in Bronx Housing Court on a daily basis.

14. During this time, Mr. Ciurcina and Mr. Haros did not have a written retainer agreement, and Mr. Ciurcina did not send invoices in relation to the New York Properties to Mr. Haros.

15. From 2002 through 2008, Mr. Haros paid Mr. Ciurcina's legal fees every two weeks and did not miss a payment.

16. Mr. Haros sold the New York Properties in 2007 and 2008.

17. Mr. Ciurcina expanded his practice in 2008 to serve the needs of Mr. Haros.

18. Between 2008 and 2010, at Mr. Haros' request, Mr. Ciurcina identified single tenant properties for Mr. Haros to purchase throughout the United States.

19. During this time, Mr. Ciurcina and Mr. Haros did not have a written retainer agreement.

20. During this time, Mr. Haros and Mr. Ciurcina agreed that Mr. Ciurcina would be paid a referral fee by the seller in each transaction.

21. Mr. Ciurcina received a referral fee in relation to Mr. Haros' purchase of single tenant properties, which cost $100 million.

22. Between 2010 and 2014, at Mr. Haros' request, Mr. Ciurcina dedicated thousands of hours to possible business opportunities related to other companies and Mr. Haros' potential establishment of an educational foundation.

23. That business venture did not result in any deal.

24. In June 2014, Mr. Haros and Mr. Ciurcina began discussions regarding the acquisition of oil and gas producing properties; the relevant properties were located in the State of Texas.

25. Mr. Ciurcina explained, and Mr. Haros understood, that Mr. Ciurcina had no prior experience with oil and gas investments; yet, Mr. Haros generally encouraged Mr. Ciurcina to become an expert on the subject.

26. Mr. Haros knew that Mr. Ciurcina spent time on essentially all of his work days performing research, making calls with oil and gas professionals, and attending events, effectively making the endeavor Mr. Ciurcina's full-time job.

27. Based on communications and representations made by Mr. Haros in New York City, on or about June 2014, Mr. Ciurcina believed in good faith that Mr. Haros would

4

compensate Mr. Ciurcina for this work.

28. Mr. Haros and Mr. Ciurcina understood that Mr. Ciurcina would have an active day-to-day role in handling the operational and legal aspects of the business, while Mr. Haros would serve in a more passive role, limited only to sourcing the funding of the acquisitions.

29. These mutually agreed upon conditions were not memorialized in writing because business activities rapidly commenced, and Mr. Haros and Mr. Ciurcina did not conduct their business dealings under written agreements.

30. Indeed, Mr. Haros and Mr. Ciurcina's relationship was based on trust from its inception, and no formal document was ever signed throughout their relationship.

31. In an email dated June 9, 2015, Mr. Haros declared to Mr. Ciurcina regarding the securing of a meeting in Texas that there was "no one better than you…action[sic] speak louder than words…a true leader…."

32. Mr. Ciurcina greatly and reasonably relied on Mr. Haros' representations, as he forewent other lucrative employment opportunities to dedicate his full-time attention to the Oil and Gas Investments with the understanding that Mr. Haros would compensate him for his services.

33. Moreover, Mr. Ciurcina's detailed time records ("Time Records") show that he was devoting the majority of his time to matters with Mr. Haros in 2014, 2015 and 2016.

34. These time records have a total of 3,111 hours devoted to Defendants and have a value of over $1,555,500.

35. The Time Records have been provided to Mr. Haros, who has offered Mr. Ciurcina no more than $59,000 for his years of work. This amount equals less than $20 per hour for sophisticated business and legal work.

36. The Time Records demonstrate nearly constant research and phone calls regarding the Oil and Gas Investments; for example, the following entries reflect daily time entries submitted by Mr. Ciurcina:

- "Telephone call(s) and email exchanges with Nick Haros regarding; current deals, opportunities, introductions, projects, meetings, conference calls, legal issues; including, but not limited to: Lunch at Babbo with [Nick Haros] …Research Public and Private Companies…7 HR" (August 7, 2014).

- "John Ciurcina and Anthony Mason represented Nick Haros. Nick Haros did not go on trip….48 HR" (Regarding a trip to Texas) (June 22, 2015).

- "Telephone Call(s) with Nick Haros discussions; including but not limited to: current deals, opportunities, introductions, projects, meetings, conference calls, trips to Texas, legal: Anthon Mason, Dan Fergus, Esq., Tracker Mineral PSA, Preparation for Closing; Research Public and Private Companies…6 HR" (October 1, 2015).

- "Telephone Call(s) with Nick Haros discussions; including but not limited to: current deals, opportunities, introductions, projects, meetings, conference calls, trips to Texas, legal…South Texas, NASCO, Peter O'Neil, Able Global Partners; Jessie Turley, US Trust; Browning Oil & Gas Inc.; Research Public and Private Companies…6HR" (January 5, 2016).

37. Between June 2014 and October 2016, Mr. Ciurcina spent the majority of his work day on efforts to build an oil and gas company from inception and secure profitable investments for Defendants.

38. Mr. Ciurcina understood that the Defendants would benefit from an investment vehicle because of his extensive experience in real estate investments. Mr. Ciurcina worked with Mr. Haros to establish Orland as the investment vehicle for the Oil and Gas Investments.

39. Mr. Haros and Mr. Ciurcina mutually arranged to retain Texas counsel in order to launch Orland as a Texas Limited Liability Company.

40. Mr. Ciurcina found and interviewed every attorney retained by Defendants, reviewed all the oil and gas contracts and worked closely with the attorneys to ensure quality

control and honesty.

41. Mr. Ciurcina reviewed the attorneys' invoices and reduced at least two invoices by $14,000 and $10,000, thereby realizing significant savings for Defendants.

42. Mr. Ciurcina and Mr. Haros together agreed on a business purpose and formulated the business model that Orland would adopt; namely, to purchase properties or interests in properties that had existing oil-producing wells.

43. Acting in good faith, Mr. Ciurcina became Mr. Haros' trusted advisor in the Oil and Gas Investments. Mr. Ciurcina reasonably believed that Mr. Haros understood the significant value that Mr. Ciurcina brought to Defendants, based on Mr. Ciurcina's prior hard and diligent work on previous acquisitions, and Mr. Ciurcina's shared dedication to making the Oil and Gas Investments profitable.

44. As Ms. Haros' trusted advisor, Mr. Haros consistently sought the advice and counsel of Mr. Ciurcina in the management of Orland; for example, in an email discussing whether to keep or fire an operator of one of the oil and gas properties, Mr. Haros asked Mr. Ciurcina "JC do you have any thoughts??? Please advise."

45. Additionally, documented in an email from July 8, 2015, Mr. Haros again addresses Mr. Ciurcina's management of Orland when he requests a "call after to discuss what to do with Tony, Talli, etc."

46. Mr. Haros, with full and ongoing knowledge, reassurance and consent, encouraged Mr. Ciurcina to hold himself out to third parties as a co-owner of Orland with the authority to legally bind the company, and in such capacity, enter into numerous legally binding contracts and commitments on its behalf.

47. On behalf of Defendants, Mr. Ciurcina established a website for the business,

www.orlandoil.com, which is operational and which Mr. Ciurcina continues to maintain for the benefit of Defendants at his sole cost and expense.

48. On behalf of Defendants, Mr. Ciurcina spent significant time on education and research into oil and gas industry investments, including attending seminars and conferences—the costs of which were paid for by Mr. Ciurcina.

49. On behalf of the Defendants, Mr. Ciurcina interviewed and hired subject matter experts, including geologists and advisors in key operational areas needed to successfully execute the Orland Oil and Gas Investments.

50. On behalf of the Defendants, Mr. Ciurcina traveled to, and within, Texas to develop relationships with property owners, banks, lenders, investors, accountants, attorneys, brokers, geologists, pumpers and other potential counterparties and vendors.

51. On behalf of the Defendants, Mr. Ciurcina coordinated and participated in deal scoping and analysis, site investigations, and due diligence.

52. On behalf of the Defendants, Mr. Ciurcina initiated daily communications with Mr. Haros on various business developments, opportunities and strategies.

53. On behalf of the Defendants, Mr. Ciurcina prepared letters of intent and confidentiality agreements; reviewed and revised contracts; engaged legal counsel and negotiated fees and retainers; and managed the legal aspects of the investment transactions, including negotiation, review, and revision of all transaction and closing documentation.

54. Through his unwavering efforts, Mr. Ciurcina discovered numerous suitable oil and gas investment opportunities that were consistent with the Orland business incentives.

55. Mr. Ciurcina effected dozens of transactions that have generated, and continue to generate, substantial profits for Orland.

56. Mr. Ciurcina developed and used his expertise and knowledge of the oil and gas industry in furtherance of Defendants' business.

57. For instance, Mr. Ciurcina's expertise and knowledge saved nearly $4,000,000 on the upfront acquisition cost in one deal. Mr. Ciurcina personally negotiated the discounted purchase of a promissory note held by a local lender, rather than having Orland purchase the properties through a real estate transaction that would have cost more than twice the amount of the discounted note.

58. Mr. Ciurcina developed relationships with, and obtained advice from, oil and gas professionals and experts on behalf of Defendants.

59. In 2015, Mr. Ciurcina engaged a highly experienced oil and gas executive to help build up the business.

60. That executive worked without regular compensation for 14 months.

61. Upon information and belief, that executive began receiving a monthly stipend in August 2016.

62. Upon information and belief, Orland is involved in some 400 wells, which have yielded in excess of 70,000 barrels of oil from January 2016 to date.

63. Upon information and belief, these wells have proven capability of producing 100 barrels of oil per day, for a sale price of $195,000 per month, based on oil cost and pricing data likely applicable to this period.

64. Upon information and belief, the costs associated with monthly operations, including vehicle repair, fuel, pump repairs, personnel costs, electricity, payroll and other miscellaneous costs amount to approximately $37,000 per month, on average.

65. Upon information and belief, Texas sales tax for oil is 4.6% and the Texas

9

corporate tax rate is 21%, therefore leaving approximately $89,280 per month in net profits, for a total of $2,142,720 in net profits to date.

66. Upon information and belief, if capital were invested into the operation so as to improve the infrastructure and subsurface definition on the properties, the properties are capable of producing upwards of 300 barrels of oil per month.

67. Upon information and belief, Mr. Haros is specifically not investing in the oil and gas properties so as to maximize Defendants' return.

68. Defendants have been unjustly enriched by approximately $2,142,720 in profits from the Oil and Gas Investments and approximately $1,550,500 in services provided by Mr. Ciurcina at the hourly rate of $500 per hour for such work.

69. However, it is believed that the Oil and Gas Investments are valued at $13,500,000, based on the potential for future production of oil—meaning the amount of oil in the ground at $55 per barrel if the Properties are utilized at maximum production. Subtracting the value of the land purchase of approximately $8,000,000, the Defendants have been unjustly enriched by an additional $5,500,000 for the value of the property, achieved solely by Mr. Ciurcina's expert negotiation and acquisition strategies for the land.

70. Based on the above, Defendants have been unjustly enriched and have had a benefit conferred of approximately $9,198,220. Mr. Ciurcina's several demands for this compensation have been refused by Mr. Haros.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
**(Unjust Enrichment and Benefit Conferred Against All Defendants)**

71. Plaintiff repeats and realleges Paragraphs 1 through 70 above as if fully set forth herein.

72. Plaintiff, over a period of three years, provided legal and business services to Defendants for which he has not been compensated.

73. Defendants received and retained the benefit from Plaintiff's services without payment.

74. Defendants have thereby gained substantial pecuniary benefits that would not have accrued to Defendants but for their wrongful conduct in obtaining Plaintiffs' valuable services and using them solely for Defendants' advantage.

75. Defendants' benefits conferred constitute the unjust enrichment of Defendants at Plaintiff's expense, for which Plaintiff is entitled to appropriate compensation in an amount to be proven at trial.

76. Plaintiff continues to suffer as a result of the unjust enrichment and the benefit conferred upon Defendants and Plaintiff is entitled to restitution in order to ameliorate his damages in an amount equal to at least $9,198,220.

## SECOND CAUSE OF ACTION
### (Quantum Meruit Against All Defendants)

77. Plaintiff repeats and re-alleges those allegations made in Paragraphs 1 through 70 above.

78. Plaintiff, over a period of three years, provided legal and business services to Defendants for which he has not been compensated.

79. Plaintiff performed all requisite services in good faith.

80. Defendants accepted Plaintiff's services for the entire duration of their relationship.

81. Plaintiff reasonably expected and continues to expect compensation for his services provided to Defendants.

11

82. Plaintiff is entitled to the reasonable value of the services that he provided for Defendants currently estimated to be $1,550,500 plus interest accrued plus costs and interests.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff requests judgment against Defendants as follows:

a. An award of compensatory damages against Defendants in an amount to be determined at trial, together with interest, but in no event less than $9,198,220;

b. Attorney's fees and costs; and

c. Interest.

**PLAINTIFF**
**JOHN CIURCINA**

By: _____
Joseph M. Pastore III, Esq. (EDNY 1717)
Pastore & Dailey LLC
1350 Avenue of the Americas, 2nd Floor
New York, NY 10019
Tel: (203) 658-8454
Email: JPastore@psdlaw.net

*Plaintiff's counsel*

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiff demands trial by jury in this action of all issues so triable.

Dated: February 4, 2019

                                                 PLAINTIFF
                                                 JOHN CIURCINA

By: _____
Joseph M. Pastore III, Esq. (EDNY 1717)
Pastore & Dailey LLC
1350 Avenue of the Americas, 2nd Floor
New York, NY 10019
Tel: (203) 658-8454
Email: JPastore@psdlaw.net

*Plaintiff's counsel*